Implant Direct Mfg. Ltd. Implant Direct Mfg. LLC. Case No. 151163. An appeal from the Southern District of New York. Mr. Kleinberg? Good morning, Your Honors. You want five minutes for rebuttal? Yes, Your Honor. Okay. If I need it. Okay. I've come from California to spend up to 15 minutes to try to convince you that the lower court abused her discretion in denying our motion. We think there are two bases for an abuse of discretion. One is that Judge Buchwald set out certain parameters which had to be met in order to find an exceptional case. And we believe that those parameters were much higher than those suggested by the Supreme Court in the Octane case. The second is that we believe that even with the higher parameters, if one examines the case, one finds that we met those parameters. That this is truly an exceptional case. The judge said that it was certainly unique, but later said that unique doesn't mean exceptional. But it is uncommon. We have several instances where the plaintiff acted in a manner that really requires that she be sanctioned in some way. You're not arguing litigation misconduct, are you? No, we're arguing patent office misconduct. We're saying that at the filing of her case, she failed to disclose the public use that Judge Buchwald found. And therefore filed her application 14 months after a reduction of practice, which was held to be public use. But that was nowhere revealed to anybody. Second, in her continuation in part, the judge found that there was, or at least in the claims that were ultimately allowed on the reissue, the court found that no reasonable juror could find substantial support in the specification for those claims. Well, on the reissue issue, on the reissue question, even if ultimately that's true with respect to the merits, is there any indication that the plaintiff was aware that the reissue was problematic, given that the PTO authorized it? Well, Your Honor, the judge also mentioned that it really wasn't the PTOs. It was the PTO that came up with the claim rather than the inventor. And I would like to refer to Judge Learned Hand in his 1924 decision where he pointed out that patent the solicitors with their ant-like persistence will overcome the patience of the examiners, which I think is exactly what happened here. This reissue case was pending for close to four or five years. And it was only after three years did Dr. Small advance the error that she felt had to be corrected. But the claims that were ultimately allowed were not the result of that error. They were in a completely different area. They were in the area of the recess, which she had abandoned in seeking the allowance of the continuation in part application. But the judge also pointed out that the reissue application was questionable, that she felt that even if we don't consider the idea of claims being recaptured, we do have the situation where the judge felt that the reissue wasn't completely applied for until long after the time for a broadening reissue had expired. But there was yet another point. The judge went to the question of patent trolls and came up with a decision that defined patent trolls. And in her earlier memorandum and order, she set forth those very elements that define the patent troll. That Dr. Small filed her case as soon as it was issued. Within six days, she had filed suit against several defendants. And a couple of years later, filed suit against additional defendants. Not to defend a product, but rather to seek some kind of settlement based on Noosa's value. And we believe that this case has gone from... It has over 363 docket entries. It's gone from 2006 to date, which would seem to be an unusual case. It's unusual because of not disclosing the prior art to the patent office at the outset, which is a violation of Rule 56. Now, did that issue go to the 945 or did that go to the 246? 246, Your Honor. But the court said that Small didn't assert the 246 against your client. No, but it affects the other case because it's a continuation in part of what was now to be found an invalid patent. Based on, in other words, the initial failure to disclose taints the whole family. It destroys the parent and it must adversely affect the children because the office would not be able to examine the case properly. They would not be able to have access to relevant prior art because of the claim priority. So you're saying that trial court's abuse of discretion in assessing the objective validity of her claims is that... We don't have to consider the 246, Your Honor. What we're saying is that if you overall look at the behavior of the plaintiff, this has to be considered an exceptional case. There has been at least three or four years of extensive litigation just to determine that the initial disclosure or the reduction of practice was 14 months before the application for patent. Before the application for the 246? The first of the parent. Okay. And yet we have a situation where this is uncommon. It's unusual. It's unique. Why is it not exceptional? It's exceptional even on the higher level that the judge said because she said no reasonable jury could find support in the... But that's the J-MAL standard. I mean, if you're saying the J-MAL standard is enough to award exceptional circumstance fees, then we're going to have attorney's fees in dozens of cases. And that doesn't sound exceptional to me. Well, Your Honor, I can't find another... This would be considered a patent troll case. And she said that... I don't remotely see how this is close to a patent troll case. I mean, she actually... Whether or not she was entitled to patent what she invented, she certainly invented something. It's something that she used in her practice. It may be that she couldn't get a patent because it was obvious or she prosecuted it badly. But she's not a non-practicing entity. She is not... There is no product that she's defending. She's seeking... She delayed her prosecution over the years to identify potential targets and then sued them within six days after her reissue came out. And that's what the Judge Buchwald defined as a patent troll. One who immediately files against a number of defendants primarily for a nuisance settlement rather than to defend the patent. She said that of Dr. Small and yet did not consider that in reaching her conclusion as to whether it was an exceptional case. Well, your problem is that this is an abuse of discretion standard. Sir? Your problem is that this is an abuse of discretion standard. Yes, Your Honor. And we think her discretion was abused because she failed to even follow her own higher standard, which we believe was an abuse of discretion to impose a higher standard than that offered by the Supreme Court in this case, which, in effect, lowered the standards for an exceptional case. So what part of the articulation of her standard do you think is outside the bounds of our claim? Well, she said it had to be something exceptional in terms of either the prosecution of the case or in the prosecution of the litigation. And we feel that that was a much higher standard than the court authorized. All right, but exceptional is the word used in the statute, right? Yes. I mean, it does have to be exceptional, but you're saying that you can get exceptionality without looking at how the case was prosecuted? We can look at exceptionality by the way the patent was obtained. Okay, so you think there was inequitable conduct in the obtaining of the parent patent? We think that the record would certainly suggest that, Your Honor. Okay, you're into your rebuttal time. Anything else you want to add? Thank you, Your Honor. Okay. Good morning, Your Honors. May it please the Court, Gerard Haddad for the appellee, Dr. Paula Small. The only question here today, Your Honors, is whether Judge Buchwald abused her discretion when she denied Implant Direct's motion for fees. Implant Direct has not shown that Judge Buchwald's decision was clearly unreasonable, arbitrary, fanciful, or based on clearly erroneous findings of fact or conclusions of law. Did Judge Buchwald say that you have to have actual inequitable conduct before the patent office or litigation misconduct before you can get attorney's fees? No, and in fact, inequitable conduct isn't even an issue in this case. No one's raised it. You won't see any inequitable conduct issue raised in any of the briefing. This is the first I've heard of inequitable conduct as we're sitting here today. Certainly, they've addressed the issue of recapture and the other issue on written description, but there's nothing they addressed related to inequitable conduct. I don't know if I answered Your Honor's question. Well, I'm still trying to understand. Do you believe that Judge Buchwald said you have to have one or the other before you could get fees? No, I think she looked at it and said you have to look at the totality of the circumstances here, which she addressed. She addressed whether Dr. Small's arguments were objectively baseless. Okay, but she actually didn't discuss whether the arguments were objectively baseless. She only looked at one side of it. She didn't discuss the recapture question. Shouldn't the trial court, if they're going to decide if anything is objectively baseless that's asserted, have to look at every single claim that's asserted? Well, is Your Honor saying that she didn't address the recapture issue in her decision on fees? Right. So the court certainly had the entire record in front of her. She was the judge, same judge, who decided the issue of recapture on summary judgment. Certainly, both parties briefed the issue of recapture in the motion for fees. And in addition, I think that at page 10, I'm sorry, 11 of her decision she did address, although somewhat generally, she said it was the patent office, the patent examiner himself who supplied Dr. Small with the language of the claim and thereby implied that it was sufficient to support a reissue patent. So I believe she addressed the issue generally. She certainly had all the facts and all the legal issues briefed when she dealt with this at the conclusion of the case. So once again, we're hearing an invitation to say that the judge impliedly ruled on this question? No, I think she actually ruled on it. I think she said that the patent examiner gave Dr. Small a reasonable basis to proceed with a litigation by giving Dr. Small the language to amend the claim in order to issue the reissued patent. So I think she did deal with it at page 11 of the record. And she also said the page before that even though her arguments weren't sufficient to save it from invalidity, they weren't objectively baseless. Yes, Your Honor. They weren't objectively baseless. And she goes on to discuss one example of that, but perhaps doesn't fully discuss the other example. She didn't fully discuss it, but certainly in the record and in the briefing, she had before her the citations to the… She certainly knew what the invalidity arguments were. Yes. Yes, Your Honor. And she did do a post-octane analysis. The case was stayed, the briefing on this was stayed pending because that octane case was up at the Supreme Court. So the parties, it was stayed. And she did a thorough analysis of octane and of the few district court cases that had come out since then as well. You didn't even appeal the validity determination. We did not, Your Honor. Should we make anything of that in terms of this assessment? It had nothing to do with this assessment, Your Honor. That was a decision made by the client not to continue the litigation any further. But it seemed to indicate that there wasn't a firm belief in the strength of those positions. It had nothing to do with a firm belief in the strength of those positions, Your Honor. I think our brief here on appeal shows that we think she, Dr. Small, did have a fair basis and to ultimately have prevailed at the district court despite the fact that Judge Buchwald found otherwise. Did Dr. Small practice this in her practice? She did, Your Honor. In fact, she did experiment on one patient. And when she actually came up with the invention, there was a patient who had come into the NYU clinic and had a loose dental implant. And she actually created some slots in the existing implant in order not to have to pull out the entire implant. So that's where she came up with the idea for the slots, the very beginnings of the idea. Judge Buchwald also noted that the case was not determined at the pleading stage but actually continued all the way through discovery to summary judgment as another factor. And of course, Judge Buchwald noted that there's no evidence that this case was brought in bad faith. And there's no evidence that there was any litigation misconduct by Dr. Small. And in fact, Implant Direct hasn't alleged any litigation misconduct in this case. And finally, this issue of a patent troll, I think Judge Hughes, you're correct in that Dr. Small is a practicing dentist and the inventor here. There was no evidence that she's a patent troll. And in fact, this idea of nuisance value settlements is the first time I've heard of it. There's no evidence in the record that Dr. Small was seeking nuisance value settlements from any defendant here. The district court mentions the existence of those settlements as evidence of good faith. That's right, Your Honor. She did. And the fact that Dr. Small sued within days of her patent issuing I think just shows that Dr. Small didn't sit on her rights. So I think that in sum, Judge Buchwald lived through this case from before the summary judgment stage all the way through to today, to the issuance of her opinion on fees and that she's entitled to deference on this issue and her order should be affirmed. And I can reserve the rest of my time for any questions. No, that's okay. Thank you. Thank you. All right, you've got some rebuttal time left. Almost your whole five minutes, so. Well, Your Honor, it's really more of a question of looking at the case as a whole, is it unusual? And it is unusual. You don't often find a case where... An unusual case is entitled to attorney's fees? I believe that's what the Supreme Court said. No, they did not. They said, if it's uncommon, I believe, was the language that was used in the case. Well, the statute says exceptional. Pardon? The statute says exceptional. Exceptional. What rises to exceptional? I mean, how many cases does one find where the prosecution runs between... Did you raise a claim of inequitable conduct as a defense to their patent assertion? No, I don't believe we did, Your Honor. Then why are we talking about it today? We're talking about it in the light of looking at extending the prosecution... I mean, those are all very fact-based questions. I mean, we can't determine on the record whether there's inequitable conduct. If you wanted to assert that, you should have asserted it before the district court, and then maybe the district court could have found inequitable conduct and used that as basis for fees. But we're not going to look at the record and say there's inequitable conduct here. I'm basing my arguments primarily on the district court's memorandum and order, which held that the patents were invalid. And I'm only taking statements from the judge to come to my conclusions, which is she found all kinds of special, unusual things happening in this case. And she commented about the fact that it was three years before Dr. Small came up with the proper application for reissue, and therefore decided that it was untimely. That's unusual. That's exceptional. It's different. It's unique. It doesn't happen every day. It's the sort of thing that a district judge would say, you know, this is a new one for me. Sounds like she had a bad patent prosecutor, not that it's unique. Pardon, Your Honor? No, go ahead. Well, part of it is the patent prosecution. It took the discovery to discover the public use. There was no way of finding out about it except by deposition of Dr. Small. And the public use came up, and that was part of the motion for summary judgment. So that even if you look at Judge Buchwald's higher standards, we believe that this case meets them. Just by reading her opinion alone, if you read her memorandum in order, it cries out for a special case, an exceptional case. She just didn't use the language. She used unique. But then later said unique doesn't mean exceptional. We think it does. Thank you, Your Honors. Thank you. The case will be submitted. Is this a class that's here? No, intern? Yes, a class? From where? From where? Oh, okay. Okay. Well, welcome. It's always good to have a learning experience. All right. The case will be submitted. This court is adjourned.